May it please the Court, Counsel. Conrad Kircher on behalf of Appellant. I'd like to reserve three minutes of my time for rebuttal, please. The question in this case is whether a comment from a coach to the assailant entitles the appellant to an inference strong enough to get the case to a jury. We believe it does. Before I explain why, I want to emphasize something very important and that is our sole appeal here is on the state created danger cause of action under 42 U.S.C. 1983. We are not appealing the Title IX causes of action nor the other branch of our 1983 claim. Unfortunately, I think what happened is that this state created danger was our strongest cause of action in the trial court. The trial court did not have a great deal of regard for our other causes of action and I'm afraid what happened was this one got thrown out with the with the bathwater with the other claims. Assume that, just for a moment with me, that the Board of Education is the only defendant here, right? Correct. And assume that you have, you know, presented sufficient evidence of all the elements of your claim with respect to school officials. How do we get from there to the Board of Education? Well, first of all, I'm not sure that's been raised on appeal by the appellee. I don't recall that being in the briefs, but to go ahead and entertain that, the coach... Well, it's just treated as something I thought of. Okay, and I'll address it, you know, Jason Sukup, the coach, is the agent of the Board and... Well, yes, but responding at superior can't be a basis for imposing liability under Section 1983. Well, granted, but, you know, the three elements of the state-created danger cause of action don't... it doesn't address responding at superior. It's whether the Board, acting through its administrators, employees, has created this danger. The Board itself can't create the danger. You know, a president of a school board on a Wednesday night meeting is not going to tell the assailant here to go take care of this in the weight room. The Board acts through its employees. But you didn't take the depositions of the Board members to find out if they even had any knowledge of these things. No, the knowledge of the administration. I mean, we took the deposition of the superintendent, of the assistant principal, of the coaches. All that knowledge is imputed to the Board. Why? Why? There's no evidence that the Board had knowledge, much less acquiesced or approved these things. You haven't presented any evidence here about that. Well, again, Your Honor, this is not an issue on appeal, as far as I know. Judge Rose did not dismiss it on those grounds, and the appellee has not briefed that. There are only three elements of... We have to look at what elements you have to satisfy to have potential Monell liability. We do have to look at that, even if the parties have been deficient in their arguments and their briefs on appeal. Okay, let me... On page 21 of our brief, we've laid out the three elements of the state-created danger cause of action under Doe versus Big Walnut, and I'll save time by not going through that. But then we cite, under, again, Big Walnut, appellant must show that, quote, the official must both be aware of facts from which the inference could be drawn, etc. So it focuses on the official, and here, Jason Soukup was the official who created this affirmative act. You know, the appellee's brief contains headings that the—as follows. Well, no affirmative act by the Board of Education. Did not—the board did not know or should not have known that Richardson would be raped. There's no evidence of an official policy, practice, or custom. I mean, it's a little odd that you would contend that the board, when it's disputing its liability very, very broadly, didn't raise a critical issue that pertains to its liability. It might not have phrased it like we have, but, you know... Your Honor, there's nowhere—I lived with this record for three years—there's nowhere in this record where the board says, we are not liable for Jason Soukup's affirmative act. Well, I mean, it probably thought it didn't have to—it probably thought it didn't have to say that because it's so well established that responding act superior liability cannot be applied to hold the governmental entity liable. If I could just add to that, I mean, the appellee's briefing, you know, has a section starting at page 35 and on that is a fairly extensive discussion of Monet and what it takes to establish municipal liability upon a board in these situations as opposed to what you seem to be arguing in large measure, responding act superior liability. We're arguing state-created danger, three elements. Number one, an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party. Number two, a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk as distinguished from risk that affects the public at large. And three, the state knew or should have known that its actions specifically endangered the plaintiff. And again, then you go down and the same case that lists those three elements, Big Walnut, this court's case, says the focus is on what the official knew. Well, none of that case law alters the rules with respect to governmental liability as opposed to officials. And for purposes of these questions, I'm willing to concede that you have presented evidence sufficient to go to a jury as to each of those elements as to school officials. But you still, or is it your position you don't have an additional hoop with respect to the board? Yes. I mean, do you have any evidence for what must be the contention that that theory modifies all the normal rules for governmental liability? Let me direct this, Your Honor, let me direct you to this court's opinion of just three weeks ago on which Chief Judge Cole was on the panel. Stiles v. Granger County, Tennessee, case number 15-5438. A sexual harassment and bullying case arising out of a school environment. Nowhere in there was respondeat superior used as a defense, particularly on the state-created danger case, cause of action. And in that case, what the court said was plaintiffs also argue that defendants, and defendants in that case include administrators, teachers, all these school employees, that defendants increased the risk DS would be exposed to violence from other students by failing to enforce the law, failing to enforce school policy. In this case, the court found for the school board, not on respondeat superior, but because there was no affirmative act by any of those officials. Well, I don't want to interrupt, and you can read Stiles as you wish, but Stiles, in my mind, is completely consistent with the state of the law under Monell, and the panel makes it clear that it's two hoops, as Judge Gibbons has said. There's the first hoop of state-created danger, which is what you're arguing largely today, and then there's the second hoop of Monell and what Monell has made clear. And Stiles doesn't seek to change that paradigm at all. It's just very consistent with Supreme Court case law and past precedent from the circuit. I don't see how Stiles gives you any extra support that you wouldn't otherwise have. That's just my view. The only thing I can say is I'm not aware of any case law that says that the school board can use respondeat superior to insulate itself from the act of Jason Sukup in this case under the state-created danger cause of action. I'm not aware of that. If I'm wrong, I'm wrong, but I'm not aware of that. Do you think you have to show some greater connection then in terms of what the school board did or did not do, that the school board acted or failed to act in the face of very clear information, that it was deliberately indifferent to a so-called policy that existed in the school? I'm going to go back to Stiles, Your Honor, and I'll read this quote from that case. The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it. Yeah, but that's under the state-created exception discussion of the opinion. The opinion also references Monell. I don't want to spend all your time talking about what Stiles says unless… Just to follow up on what Chief Judge Cole is asking, what is the evidence in the record that the board members had a policy or practice that gave rise to the events that you allege in your complaint? If you mean the five elected board members, none. Well, doesn't that mean that under Monell you lose? No, Your Honor. Why not? No, because it's not the policy of the board as officially passed. It's the policy that's engaged in an operation by the school board. But you don't have that either because you don't have any evidence that the school board even knew about these problems. Your Honor… You didn't depose them, and you don't have any evidence of that. Your Honor, again, I don't think that's a requirement. We have evidence, testimony from the athletic director that this conduct was, at least at one time, rampant. Did he testify that the board knew about all this, and he had some evidence or some personal knowledge that the board knew about all this? Not at all. He did not. And this is the athletic director at a particular school, right? At the high school, correct. I mean, is there any evidence, whatever, that would take this policy outside this particular school or this atmosphere? Yes. These boys testified that this conduct was going on in junior high. But we're not just talking about a teacher or a maintenance person. We're talking about administrators. If the board doesn't act, if a school district, a school board, doesn't act through its administrators, I don't know how there's ever any accountability for a school board. Well, I mean, the board might be negligent for not knowing a little more about what was going on at the school. But that doesn't work either. No. Well, true. True. But there's, well… You want to reserve your time for rebuttal, and you can hear what the board's attorney has to say, and you can respond. Thank you. Good morning, Your Honors. My name is Jamie Pragen. I represent the school board. Listening to the discussion on the Monell claim has kind of made me, I mean, I looked at this last night. Again, I read my brief with respect to the Monell section that I included in the brief, and I realized that in the reply brief, the appellant did not respond to any Monell claims, any of the Monell argument, which made me think last night when I was looking at this, is this waived? It appears to have been at least abandoned because he didn't address it in his reply brief. Regardless, certainly the issue of Monell was fully briefed in front of the district court and was briefed on appeal by the appellant or by the appellee. There was a scant reference to the inaction theory in the briefing that was raised by the appellant in his brief, sort of in passing, which is what prompted the Monell section in our brief. But certainly, I don't believe that this is an issue that the appellee has walked away from in any respect. With respect to the comment that appellant has focused on from the assistant coach, Coach Sukup, Judge Rose correctly found that that comment by itself did not raise any issue for trial based on the undisputed facts in the record. And those undisputed facts never really been fully addressed or explained by the appellant. It's undisputed that no coach, no baseball coach, as Judge Rose found, ever condoned or encouraged physical violence with the students. It's further undisputed that one of the perpetrators here, the one that says that Coach Sukup made the comment to him, did not understand it to be, he didn't understand what the comment meant, but he also fully understood that no coaches that he had ever encountered in the school district had ever condoned or encouraged physical violence. So the question is, how can that be an inference as the appellant argues that it was some sort of an order of an assault on the appellant given those undisputed facts? Judge Rose correctly found it wasn't. There's plenty of evidence in the record that he said to take care of it, and there's plenty of evidence in the record that things were typically taken care of in the manner that they were in this case. That might or might not permit the inference, but certainly there's a lot of proof that the plaintiff presented that this was a pretty bad situation in the school and a lot of indication that school officials knew about it. Correct? I would disagree with that characterization, and I guess I'll take a step back and look at what the alleged assault was in this case. It's an alleged sexual assault, and the record is devoid of any prior sexual assaults going on within the school district that anybody, much less the school board, had knowledge of. So with respect to that, I would say absolutely no. There is no evidence in the record that would suggest that the school knew that something of that nature was running rampant in the school district. In fact, the record proves the exact opposite. Let me, I guess, just interject to make sure I'm clear. So I know there's something in the record about students engaging in, I don't know if I would call it horseplay because it's probably more than horseplay, that involved at least touching of students in, I would just say, private areas, and I think there was a term, gooching, that was used or some other term that was used, and certainly students were aware of it. Is the record clear that there were no teachers or school officials who had no idea that this inappropriate or, you know, some could say sexualized, I suppose, horseplay was going on? I'll speak to that exclusively from here. You have to break it down into two parts because the gooching that you mentioned is a separate act from this ball tapping, as it's been described. I've never expected to ever be discussing this type of stuff at this level in front of a panel of judges. I was trying not to raise the term myself. I know. I'll be an adult. We'll talk about it. It was very delicate. It was very delicate, but it's an important concept to understand, so I'll talk about it in some detail. With respect to ball tapping, it's something different from gooching, and ball tapping is pretty much what it sounds like. It's teenage boys hitting each other in the testicles. And curiously, I won't take too much of an aside on this, but on ESPN.com last week I saw an article about a Major League Baseball player, Adam LaRouche, who had retired because the Chicago White Sox wouldn't let his son, his young son, go into the locker room anymore. So he walked away from his contract and retired. And in reading this article there was a quote where Adam LaRouche says, because the writer was questioning why would you let a child into a men's locker room like this, and Adam LaRouche says, there's no other workplace where you walk in and guys are slapping each other in the nuts and saying the stuff they do. So apparently, I mean I was kind of under the notion that this ball tapping was something that happened with adolescents, but apparently grown men making millions of dollars are doing it in professional locker rooms. I don't know that I would call that. I mean certainly it's... A professional locker room is a lot different from a... Certainly, and that's why I didn't want to get on too much of an aside, but just to point out, I mean this seems to be something that isn't just happening at the Huber Heights School. What about the argument that was made by the appellant that had to do with the athletic director's evidence? Well, okay, and I was going to get to that, Judge. There was a period of time in one of the junior high schools where I think, and I wasn't at that particular deposition, but I think the tone may have been kind of exaggerating a bit, but he said that it was running rampant, ball tapping was running rampant within this particular school. So the school took measures to avoid, to eliminate that. They made announcements on the public address system. They disciplined people who were doing it, and the record actually shows it decreased. Different school. Correct. It was in a junior high, not in the actual high school. I don't believe that was the testament. I think it was the junior high below, but the school took effective steps to address that, and the record actually shows that the frequency of this ball tapping decreased based on what the school had taken action to do, and certainly there's a policy in place that prohibits such behavior and conduct from students. So there's no policy that said go right ahead and do it. They do it in Major League Baseball. Go ahead and do it wherever you want. There's nothing like that here. So the concept of ball tapping I think is separate from the concept of gooching, and the ball tapping issue, I mean the school was taking action and decreasing that. I don't care to explore any further the difference. Okay. Point well taken, Judge. I guess without getting into too much detail on this gooching business, other than it's a separate act than ball tapping, the record established that that was kind of a new phenomenon that was just starting to occur in the high school. So that's not something that was running rampant for years. This is something that was just sort of starting. So school officials were aware that it was going on, but the record reflects that they were taking immediate action to try to stop it or limit it, and had a policy, of course. Right, and I guess that's a separate point. They were aware of the ball tapping. They did something about it. It decreased. Appellant actually argued before Judge Rose that because the school was so effective in dealing with ball tapping, gooching evolved because that was something different. But in any event, yes, the record shows that the ball tapping was addressed. Gooching was just starting when the school became aware of it, which the record clearly shows that the school was not aware of this new act until this incident. But when they became aware of it, they took action, and it was actually reported as a sexual assault, and these individuals were led out of the school in handcuffs. They were arrested and charged in juvenile court. And the record again shows that gooching became practically nonexistent, is the term that was used to describe it, after that action was taken. So again, the record is showing, I mean, number one, kids are going to be kids. Kids are going to do stuff that's stupid and inappropriate. It's going to happen. There's nothing we can do about that. But the record shows when the school has policies to prohibit that, but you can't monitor students 24 hours a day every place that they're at in the school. Something's going to happen outside of their knowledge, which, by the way, the record conclusively shows that too because the students who were deposed all said to a person that they knew the school frowned upon that conduct and didn't allow it. So what did they do? They did it when the teachers and the coaches, when nobody was around, they did it. Which, again, how would the school know that was going on if they weren't witnessing it? And when they did witness it, they did something about it. Are you going to address the Monell issue specifically as regard to the exposure that the board members might have? Certainly. Again, and the law does seem to be clear and recognize that no school board would ever have a policy that says go ahead and do this. So there's an inaction theory that has been created under Monell where, I mean, there's four elements to it. One of the elements is clearly, well, number one, I think all of the elements are not satisfied here, but the one, the first one, the existence of a clear and persistent pattern of abuse in the school. There's no pattern of sexual abuse in the school. So that clearly is not satisfied here. I mean, we can split hairs over the ball tapping and the gooching, but as far as sexual assaults, the record is devoid of anything like that. And thousands of pages of documents were produced in discovery. I was looking, I was checking when I was sitting back there. Over 6,500 pages were produced by the board in discovery, dealing with all sorts of disciplinary requests and actions taken over the past 10 years. We jumped through all the FERPA hurdles to do that. Why isn't hitting people on the genitals, why isn't that a sexual assault? I'm not following what you're saying now when you say there's no evidence of any sexual assaults. Well, and in terms of sexual assault, I guess I'm referring to that in terms of some sort of sexual contact like penetration. I mean, there's certainly no, none of the documents were dealing with rapes. People's hands were going in crevices near to or related to genital areas. That sounds like a sexual assault to me. And I guess it's hard to say why kids are doing that, if they were doing it for a sexual nature or not. I don't think there's anything in the record that actually says they were trying to do it for sexual purposes. And, in fact, the students who were deposed in this case were asked those very questions, and, of course, they said no. Are you trying to distinguish between the board's knowledge of one kind of inappropriate sexual contact and not another kind of inappropriate sexual contact? I guess, to directly answer your question. I thought if I understood your adversary's comment to be that there wasn't any evidence of board knowledge of anything, that he is relying not on the fact that the board knew, but rather he doesn't think he has to establish anything further after he establishes the elements of his state-created danger theory. And what I just heard you to say was the board did have some knowledge about one kind of inappropriate sexual activity. That's a fair question, Your Honor, and I don't mean to imply the board had knowledge of any of it one way or another. The records that I'm saying that were produced in discovery were from individual schools, various discipline. Was there discipline handed out for ball tapping in junior high? Yes, I mean, there was. Did the board have knowledge that that was happening one way or another? There's no evidence in the record that says that. And there was a concession made that, in fact, there is nothing in the record that says the board knew that. I see my time is just about up. If there's any other questions, I'm happy to address them. Otherwise, I'll submit on the brief. Apparently not. All right. Thank you, Your Honors. Thank you. I believe I've cleared up my confusion. I hope I can articulate this to the Court. In our brief, beginning on page 22, we have one paragraph regarding Monell. And I'm not sure why it's in there. I think it's an error. It relates to the inaction theory. It explicitly says in the second line after the Monell quote, in order to prove this inaction theory, we do not have an inaction theory on this appeal. We are only going with the affirmative act under the state created danger policy. I apologize for that confusion. I went back and I looked at the Court's decision. The Court, beginning at page 17, addresses Monell. Again, on the following page, 18, the Court is explicit that plaintiff's argument is based on an inaction theory. That was a cause of action we have abandoned for this appeal. We brought that in the trial court. That's not the basis for our appeal here. Whether you're complaining of inaction or not, it would be inaction on the part of the Board that you have to, I mean, not that, if that were your element, you know, you would have to, I mean, it would be inaction of the Board we were concerned with, not inaction of school officials, right? No, Your Honor. I think under the state created danger, those three elements, all that's required is that you Back to Monell doesn't apply to me if I'm proceeding under the state created danger. That is my position. That is definitely my position. And if I'm wrong, I'm sure you'll tell me in the opinion, but that is my position. And I have nothing further unless the Court has questions. I guess no further questions. Thank you very much, counsel, both of you for your arguments today. The case will be submitted.